## Long et al. v. Long et al.

October 22, 1946.

Rehearing denied Dec. 20, 1946.

Oscar M. Smith for appellants.

James C. Lyne for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

The principal question involved on the appeal and the cross appeal is the construction of the will of J. B. Long, who died in 1918, leaving his widow, Mrs. Maggie Long, and four children, Mrs. Beckie Long Johnson, the appellee, and cross appellant, Lizzie Long, and the appellants, Joseph and Eclas Long. Mrs. Long died in 1933. Mrs. Johnson died in 1936, leaving her husband, who is now dead, and three children. Lizzie Long remained unmarried and lived on the home place until 1944, when she left and went to Russellville. She instituted this action seeking a construction of her father's will, the principal provisions of which follow:

"Second, I will that all the remainder of my estate of every kind and description, real, personal or mixed, to go into the hands of my two sons, Joseph and Eclas Long, to be held by them in trust for my wife, and my daughter, Lizzie Long, so long as they may live or remain unmarried, the entire proceeds of the farm after cost of production to be used for the support and comfort of my wife and daughter above named; in the event of the death of my wife, my daughter is to share the proceeds of said farm as long as she remains unmarried, but should she outlive her mother and marry before or after her mother's death, then and in that event she is to share only as my other children do, but in no event shall there be a division of my estate as long as my wife lives or remains unmarried.

"My two sons Joseph and Eclas Long may in per-

son, or by using renters or hired labor cultivate said farm, as their judgment and the conditions suggest as best for their mother and sister who are at all times to live on said premises if they see proper so long as they remain unmarried after which or in the event of the marriage of my daughter after the death of her mother then my whole estate shall be equally divided between my four children or their heirs.''

Miss Long charged that her brothers had failed and refused to provide a home for her; they had operated the farm for their own use; they had made no accounting; she was the owner of an undivided one-fourth interest in the property; and when she left the farm it was mandatory that there be a division of the estate between Mr. Long's four children or their heirs. The trustees took the position that the will was unambiguous; their trusteeship should continue; the appellee was entitled to only one-fourth of the proceeds from the farm; and they were entitled to $400 which they had advanced for its upkeep. Considerable proof was taken on various phases of the case and it was finally adjudged that the estate be sold and divided into four equal parts, a share going to each of Mr. Long's children or their heirs; the counterclaim of the appellants should be dismissed; the appellants be required to make an accounting for the crops grown in 1945 and pay 20 per cent of the total proceeds from the farm for that year to the appellee; and the appellee recover nothing from the appellants for the borrowed money.

The primary contention of the appellants is that it was error to adjudge the estate had vested. On the other hand, the appellee seeks to uphold that part of the judgment, but insists that she is entitled to an accounting for the entire period of trusteeship of her brothers; that she is entitled to all the proceeds above the cost of operation for 1945; and that it was error to cancel the debts owing her by her brothers, since that issue was not injected into the case.

It is obvious from reading Mr. Long's will that his primary concern was the welfare of his wife and his unmarried daughter, so long as they lived and remained unmarried. On the other hand, he seemed to have complete confidence in his sons and directed that they operate

the farm according to their best judgment and that they turn over to their mother and sister the entire proceeds from the farm above the cost of operation. According to the first paragraph of the second clause of the will, the appellee was to be given one-fourth of the estate upon her marriage, but in no event was the estate to be divided before the death of her mother. No question could be raised as to the distribution of the net proceeds from the farm so long as the widow and daughter were living and remained unmarried, but since the mother predeceased the daughter, it becomes necessary to construe the following wording of the second clause: "* * * in the event of the death of my wife, my daughter is to share the proceeds of said farm as long as she remains unmarried, but should she outlive her mother and marry before or after her mother's death, then in that event she is to share only as my other children do, * * *."

The appellants contend the direction that the unmarried daughter was "to share the proceeds of said farm" means she was to take only one-fourth, while she contends it was her father's intent that she be given all of the net proceeds and that only in the event of her marriage was she to share as the other children. With the contention of the appellee we are in accord, because when we construe the will as a whole, as we have frequently said we must do in order to determine the intent of the maker (Wetstein's Ex'r v. Shannon, 302 Ky. 371, 194 S. W. 2d 830), we cannot escape the conclusion that the primary concern of the testator was to make provision for his widow and his unmarried daughter so long as they lived and remained unmarried. The estate was a small one and one-fourth of the net income therefrom would be insufficient to support the appellee. This the testator must have known.

The last paragraph of the will presents another question. Under this provision counsel for the appellee has advanced a very forceful argument to the effect that a division of the estate could be brought about by the appellee in two ways; first, by her marriage after the death of her mother; and, second, by leaving the home place. The argument is made that the words "after which" relate to two conditions, namely, the mother and daughter were to live on the property if they saw proper, and they could live there if they remained unmarried. Upon the

happening of either contingency the estate should be divided. The acceptance of this argument would put undue emphasis upon only two words in the will. As we have already indicated, we cannot escape the conclusion that it was the testator's intent to furnish a home and means of support for his widow and daughter so long as they lived and remained unmarried. We cannot read into the will the intention that the testator meant the trusteeship could be terminated by the unmarried daughter leaving the home place after the death of her mother. The sons were charged with the operation of the farm for the benefit of their mother and unmarried sister under certain conditions. It seems clear to us the testator felt that upon the remarriage of his widow and the marriage of his daughter his responsibility was ended. He was not willing that there be a division of his estate otherwise.

The record shows that little, if any, cash was turned over to the appellee until she went to Russellville in 1944. She raised chickens and turkeys, however, and apparently saved some money, because she was in position to lend money to her brothers. Furthermore, there is proof to the effect the farm was not properly managed, and that it was used primarily for the benefit of the trustees. Under the circumstances we believe they should be required to make an accounting of their trusteeship in the past. In the future they should keep adequate records to enable them to make an accounting each year, and they are to turn over to the appellee the proceeds above operation so long as the appellee lives and remains unmarried. Of course, she is entitled to make her home on the premises if she so desires.

Since we find no pleading under which the appellee sought to collect the debts owing her by her brothers, we think it was error to adjudge their cancellation.

Wherefore, the judgment is reversed on both the appeal and cross-appeal, with directions for the entry of a judgment consistent with this opinion.